Willard Bartlett, Ch. J.
 

 (dissenting). The judgment of the Appellate Division which it is proposed to affirm in this case sanctions a permanent occupation of the plaintiffs’ land by the defendant corporation. None of the cases cited in the prevailing opinion goes as far as this.
 

 It is quite true that a court of equity is not bound to
 
 *303
 
 grant an injunction “where it will produce a great public or private mischief, merely for the purpose of protecting a technical or insubstantial right.” But I am unable to classify the right to the possession of one’s own land in the category of technical or insubstantial rights. On the contrary, it seems to mé that no right can be more substantial. Here the defendant is not merely a
 
 quasi
 
 trespasser upon easements of the plaintiffs as in the principal elevated railroad case cited by my brother Collin
 
 (O'Reilly
 
 v.
 
 N. Y. Elev. R. R. Co.,
 
 148 N. Y. 347), but it is an actual invader of the plaintiffs’ property by flooding back upon it the waters of the Chateaugay river for a distance of 420 feet, thereby lessening the water power available to the plaintiffs thereon.
 

 The findings of the trial court, which remain undisturbed by the modification of the judgment, establish the fact that the plaintiffs’ premises which are overflowed by the action of the defendant constitute a valuable water power, and that the setting back of the water thereon has deprived the plaintiffs of the use and enjoyment of their lands and lessened the amount of available power upon the river to which the plaintiffs are entitled. This is admitted to some extent even in the prevailing opinion at the Appellate Division, where it is conceded that the part of the chasm thus flooded might be used by the plaintiffs as a tail race. We have here, then, the case of a water power of substantial value which it is proposed to leave in the possession of those who have unlawfully invaded it because, as is intimated by the court below, an injunction can do no good to the plaintiffs and will greatly harm the defendant. I do not agree to the proposition that an injunction will do no good to the plaintiffs. It will give them possession of their water power to its full extent and enable them to build a power house on their property which the overflow now prevents them from doing. It will remove the cloud upon their title caused by the adverse occupation of their lands by the defend
 
 *304
 
 ant which manifestly constitutes an obstacle to the ready sale thereof should they desire to sell it. In the situation in which it is proposed to leave the plaintiffs a purchaser of their property necessarily buys a lawsuit, unless he is willing to allow the land to remain covered by the water thrown back thereon by the defendant’s dam. He cannot obtain the complete and absolute use and occupation of the premises without intervening in this action or bringing a new action to procure the very relief that has been denied to the plaintiffs here.
 

 In
 
 Corning
 
 v.
 
 Troy Iron & Nail Factory
 
 (40 N. Y. 191, 205), which was a case of wrongful diversion of a stream, it was urged in this court that the final judgment should not award a mandatory injunction for the restoration of the water to its natural channel because it would be productive of great injury to the defendant and little benefit to the plaintiffs. There the plaintiffs had been deprived of their water power not, as in the present case, by overflowing them land but by diverting the water therefrom. This court, speaking through Grover, J., said: “The question then comes to this, whether the defendant, who has wrongfully diverted from the plaintiffs a stream affording such a water power, shall be permitted to continue such wrongful diversion, and thus to deprive the plaintiffs of what is clearly theirs without their assent, upon the ground simply that its restoration would be a great damage to it. In other words, that by its continuance wrongfully to appropriate to its own use the property of the plaintiffs, it derives a much greater benefit than the plaintiffs could by being restored to their own. The bare statement of the question would seem to suggest the only proper answer. The very idea of justice is to give to each one his due. ” In my opinion it is due to these plaintiffs that the defendant be compelled forthwith to desist from flooding their lands.
 

 Not only is the invasion thereof a continuous trespass
 
 *305
 
 but it is a private nuisance as well. The findings show this.
 
 “
 
 To refuse an in j miction after the right and nuisance are completely established * * * would be contrary to equity and good conscience, as well as contrary to every well-considered case. In such a case no
 
 actual pecuniary damage
 
 need be proved, the law imports damage to support the right, and when the right and its violations by a continuous or threatened act is established, an injunction may fairly be said to be a matter of right.” (Wood’s Law of Nuisances [3d ed.], § 782.) If the right to an injunction may be stated thus positively in the case of a mere nuisance, how much more strongly may it not be asserted in the case of an actual appropriation and hostile occupation of land without warrant of law ?
 

 For the reasons stated in addition to those given by Mr. Justice Betts in the court below, I dissent and vote to reverse the judgment of the Appellate Division so far as appealed from by the plaintiffs and to reinstate the judgment of the Special Term in all respects.
 

 Werner, Hisoock, Cüddeback and Hogan, JJ., concur with Collin, J.; Miller, J., concurs with Willard Bartlett, Ch. J.
 

 Judgment affirmed.